IN THE SUPREME COURT OF THE STATE OF IDAHO
Docket No. 38417

JIM BRANNON, )
)
    Plaintiff-Appellant, )
)
v. ) Coeur d'Alene, September 2012
)
CITY OF COEUR D'ALENE, IDAHO, a ) 2012 Opinion No. 140
municipal corporation; SUSAN K. )
WEATHERS, in her capacity as the City of ) Filed: November 16, 2012
Coeur d'Alene City Clerk; and MIKE )
KENNEDY, in his capacity as the incumbent ) Stephen W. Kenyon, Clerk
candidate for the City of Coeur d'Alene )
Counsel Seat #2, )
)
    Defendants-Respondents. )

---

Appeal from the District Court of the First Judicial District, State of Idaho, Kootenai County. Hon. Charles W. Hosack, District Judge.

District court decision affirming election results, affirmed.

Starr Kelso Law Office, Chtd., Coeur d'Alene, for appellant. Starr Kelso argued.

Scott W. Reed and Michael L. Haman, Coeur d'Alene, for respondents. Michael L. Haman argued for respondents City of Coeur d'Alene and Weathers. Scott W. Reed argued for Kennedy.

---

BURDICK, Chief Justice

This case appeals the Kootenai County district court's denial of Jim Brannon's (Brannon) election contest of the Coeur d'Alene city council election in 2009. In the official vote total, Brannon lost the election for seat 2 of the city council to Mike Kennedy (Kennedy) by five votes. Brannon then filed an election contest that alleged numerous irregularities and sought to set aside, void, or annul the election. After a bench trial, the district court issued a memorandum decision that affirmed the election result, finding insufficient illegal votes or irregularities to change the outcome of the election. On appeal, Brannon argues that the City delegated its election duties to Kootenai County in contravention of Idaho law, that the district court made

1

numerous factual and legal errors at trial, and that the district court erred in denying Brannon's motion to disqualify and motion for new trial. We affirm the decision of the district court.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The city of Coeur d'Alene held a general election on November 3, 2009. As part of that election, Kennedy, the incumbent, was in a contest against Brannon for seat 2 on the city council. The official election results showed 3,165 votes for Kennedy and 3,160 votes for Brannon.

On November 30, 2009, Brannon filed a complaint that included multiple claims and a request to set aside the results of the election. An amended complaint was filed on December 10, 2009. The amended complaint named the following defendants: the city of Coeur d'Alene (the City), Susan Weathers (Weathers) in her capacity as city clerk, Kennedy in his capacity as incumbent candidate for city council seat 2, the entire city council individually, and the mayor. The amended complaint alleged numerous failures by the City and Kootenai County, including a failure to follow applicable election law that resulted in improper absentee ballots being counted.

After some preliminary matters, only the City, Weathers, and Kennedy remained as defendants. The original district judge assigned to the matter, the Honorable John T. Mitchell, voluntarily disqualified himself from the proceeding on December 4, 2009. Judge Mitchell was replaced by Judge Benjamin R. Simpson. Brannon filed a motion to disqualify Judge Simpson for cause under I.R.C.P. 40(d)(2)(4) on March 8, 2010, which the district court denied. However, Judge Simpson entered an order of voluntary disqualification on April 13, 2010. Senior Judge Charles W. Hosack was assigned to take jurisdiction in the matter. On the first day of trial, Brannon filed a motion to disqualify Judge Hosack for cause under I.R.C.P. 40(d)(2)(A)(1) and (4). Judge Hosack denied the motion, and began the bench trial on September 13, 2010. The trial consisted of five days of argument and testimony regarding the conduct of the election and the nature of the absentee ballots that were counted.

The district court issued a memorandum decision on November 5, 2010, affirming Kennedy's election victory. Specifically, the decision found that there were insufficient illegal ballots to change the outcome of the election, and that the alleged irregularities did not constitute malconduct.

Brannon filed a motion and memorandum for new trial, or in the alternative, to amend the judgment on November 8, 2010. The motion was heard on December 7, 2010, and denied by the

district court in a January, 4, 2011 order. Brannon timely filed a Notice of Appeal on November 15, 2010, and filed an Amended Notice of Appeal on February 1, 2011.

## II. ISSUES ON APPEAL

Appellant raises the following issues on appeal:

1. Whether the district court erred in denying Brannon's Motion to Disqualify.
2. Whether the district court erred in ruling that non-city residents were entitled to vote in the election under the Uniformed and Overseas Citizens Absentee Voting Act (UOCAVA).
3. Whether the district court erred in refusing to order non-city residents who returned absentee ballots to testify as to their residence and for whom they cast their vote.
4. Whether the district court erred in dismissing Brannon's malconduct claim.
5. Whether the district court applied an incorrect burden of proof for election contests.
6. Whether the district court erred in finding that the county counted 2051 valid absentee ballots.
7. Whether the district court erred in finding no error in the city's vote counting or election result.
8. Whether the district court erred in finding that the City could delegate city election duties to Kootenai County.
9. Whether the district court erred in retaining only the claim to set aside the election for seat 2, and dismissing the claim to set aside the entire election.
10. Whether the district court erred in denying the motion for new trial or amended judgment.
11. Whether the City is entitled to costs and fees on appeal.

## III. ANALYSIS

### A. Whether the district judge erred in denying Brannon's Motion to Disqualify.

On September 13, 2010, Brannon filed a motion and an accompanying memorandum to disqualify Judge Hosack for cause. In the motion, Brannon moved for disqualification under I.R.C.P. 40(d)(2)(A) on the grounds of interest and or prejudice against Brannon by Judge Hosack. September 13, 2010 was also the scheduled first day of trial, so the motion for disqualification was argued immediately. The 76-page motion and accompanying materials were filed at 8:50 a.m., and argument began at 9:16 a.m. Judge Hosack denied the motion from the bench after hearing argument by both parties.

On appeal, Brannon argues that the district judge erred when he denied the motion to disqualify Judge Hosack for cause. More specifically, Brannon argues that the denial was not

based upon any analysis, that Judge Hosack never claimed that his disparaging prior statements on election contests were inaccurate, and that the district court failed to identify the discretion standard for its decision. In response, the City argues that the motion was based solely on a vague comment made by the judge in an unrelated matter and was correctly denied.

1. Standard of Review

"Whether a judge's involvement in a case reaches a point where disqualification from further participation in a defendant's case becomes necessary is left to the sound discretion of the judge himself." *Sivak v. State*, 112 Idaho 197, 206, 731 P.2d 192, 201 (1986).

> To determine whether there is an abuse of discretion this Court considers whether (1) the court correctly perceived the issue as one of discretion; (2) the court acted within the boundaries of such discretion and consistently with legal standards applicable to specific choices; and (3) the court reached its decision by an exercise of reason.

*Lee v. Nickerson*, 146 Idaho 5, 9, 189 P.3d 467, 471 (2008).

2. Whether the district judge erred in denying Brannon's Motion to Disqualify.

In the motion, Brannon moved for disqualification on the grounds of interest and or prejudice against Brannon by Judge Hosack. In support, Brannon cites comments made by Judge Hosack in the transcript of a September 7, 2010 Contempt Hearing. The September 7, 2010 contempt hearing was prompted by the online publication of an affidavit by a non-party, Bill McCrory. The hearing was to determine whether McCrory was in contempt when he published information regarding ballots and ballot envelopes that was subject to a confidentiality stipulation. The hearing focused on the nature of the confidentiality and the potential disclosure of sensitive voting information.

Brannon's motion took exception to snippets of two comments by Judge Hosack. First, that "Judge Hosack harbored and possessed unrevealed personal opinions that election contests of the nature of this case have 'ramifications upon the average voter' that are 'not a salutary connotation.'" Second, that the judge had an opinion that the process of voters "to be 'grilled by a Judge' to testify for whom they cast their ballot 'is an anathema to everything about our democratic process.'" To Brannon, these comments indicate an opinion by the judge that this election contest is not beneficial to Coeur d'Alene.

To properly understand the nature of Judge Hosack's comments, they must be placed in context. Below are Judge Hosack's comments with the portions Brannon extracted in bold:

4

There are some very meritorious arguments here raised by Mr. Macomber with regard to the technical inadequacies of this particular contempt proceeding.

And I'm not certain that we necessarily need a trial for the Court to resolve those. On the other hand, the Court has a concern in this litigation about the rights of the citizen voters. This type of litigation which may be and no doubt is and should be important in litigants **has a ramification upon the average voter** that in the view of this court is **not a salutary connotation**.

And there's been arguments even made in open court that because this is an election case, a court should exercise extraordinary powers never used in civil litigation before in the history of American jurisprudence and haul citizens back at their own cost into court for a hearing for trial because they voted. That's very disturbing to this court. The wisdom of the American democracy is not delivered by the fiercely partisan voting.

The wisdom of the American democracy is delivered by the average citizen that goes down to the voting place on the day of the election and votes as they see best to serve their community and does so out of public duty. Not because they have some crusade or some test point that they want to prove, but because they want to see their community work.

To have litigation, publishing voters' names, calling in whether their affidavits are correct, whether they're legal or illegal, whether they can be hauled into court, **grilled by a judge** with regard to their votes, **is an anathema to everything about our democratic process**.

So the secrecy, the confidentiality, the privacy of the voter is of paramount concern to the Court, and some apparent disregard of those issues by litigants or participants is of concern to this court.

Argument on the motion for disqualification was heard on September 13, 2010, and after hearing argument from both parties, Judge Hosack denied the motion in a ruling from the bench. In his denial, Judge Hosack provided further context and clarification for his earlier comments:

[T]he comments then that I made were in the context of whether or not to dismiss the contempt proceeding and while there were technical issues, at least superficially, prima facie, for purposes of a motion to dismiss, the issue before the Court was an alleged court order requiring confidentiality, an individual inspecting documents pursuant to that order of confidentiality and then that individual turning around and publishing that very information obtained through the confidentiality order on the Internet. Not only that, it pertained to ballots.

After additional explanation, Judge Hosack denied the motion to disqualify. "[T]hose comments were extremely limited, extremely focused and on a proceeding that as Mr. Kelso points out had absolutely nothing to do with this case. So that's how I can proceed. And the motion to disqualify will be denied."

5

Brannon brought his motion for disqualification under I.R.C.P. 40(d)(2)(A)(1) and (4). I.R.C.P. 40(d)(2)(A) states in pertinent part:

Any party to an action may disqualify a judge or magistrate for cause from presiding in any action upon any of the following grounds:

1. That the judge or magistrate is a party, or is interested, in the action or proceeding.

. . .

4. That the judge or magistrate is biased or prejudiced for or against any party or the case in the action.

It is clear from the context that Judge Hosack's comments were not aimed at Mr. Brannon, election contests generally, or at this election contest specifically. His comments were narrowly focused on the public policy issue of voter privacy and confidentiality. On the issue of judicial bias, this Court's decision in *Bach v. Bagley*, 148 Idaho 784, 792, 229 P.3d 1146, 1154 (2010), adopted a standard from the United States Supreme Court opinion in *Liteky v. United States*. 510 U.S. 540 (1994). In *Liteky*, the Court noted that:

[O]pinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep seated favoritism or antagonism that would make fair judgment impossible.

*Id*., at 555–56. Based on this standard, Judge Hosack's comments do not warrant disqualification, since the comments emphasized by Brannon were taken out of context and do not show any bias or interest. Rather, they only refer to the weighing, in public policy terms, of election contests and voter privacy, which was the issue in the collateral proceeding. These comments are nothing more than balancing the sacrosanct theory of secret ballots and the conflicting ability to have post-election evidentiary procedure. Certainly nothing in these comments is directed against the concept of election contests or any of the parties in this litigation. Therefore, they do not display favoritism or antagonism as would be required under *Liteky*.

Brannon also argues that Judge Hosack did not explicitly state either the applicable legal standards or that this was an issue of discretion for the court. Although Judge Hosack did not use the word "discretion" or give a detailed recitation of the applicable legal standards, he did not need to do so. The ruling was detailed, based in reason, and within the bounds of the district court's authority. The above stated remarks by Judge Hosack did not express any bias or interest

6

in the matter before this Court, and his explanation at the motion hearing serves as confirmation. We therefore hold that the district court did not err by denying Brannon's motion for disqualification of Judge Hosack.

**B. Whether the district court erred in ruling that non-city residents were entitled to vote in the election under the Uniformed and Overseas Citizens Absentee Voting Act (UOCAVA).**

After the trial, the district court issued a memorandum opinion that stated, in part, five disputed votes were legally cast under the Uniformed and Overseas Citizens Absentee Voting Act (UOCAVA). On appeal, Brannon argues that UOCAVA does not apply under the municipal election laws, and that the district court erred in holding otherwise. In response, the City argues that the law was properly applied, but even if the district court erred, that there was no admissible evidence on record regarding the vote of the five voters at issue.

1. Standard of Review

"This Court exercises free review over questions of law." *Fuller v. Callister*, 150 Idaho 848, 851, 252 P.3d 1266, 1269 (2011). This Court also exercises "free review over matters of statutory interpretation." *KGF Dev., LLC v. City of Ketchum*, 149 Idaho 524, 527, 236 P.3d 1284, 1287 (2010) (quoting *State v. Doe*, 147 Idaho 326, 327, 208 P.3d 730, 731 (2009)). "The interpretation of a statute 'must begin with the literal words of the statute; those words must be given their plain, usual, and ordinary meaning; and the statute must be construed as a whole. If the statute is not ambiguous, this Court does not construe it, but simply follows the law as written.'" *Verska v. Saint Alphonsus Reg'l Med. Ctr.,* 151 Idaho 889, 893, 265 P.3d 502, 506 (2011) (quoting *State v. Schwartz,* 139 Idaho 360, 362, 79 P.3d 719, 721 (2003)). "A statute is ambiguous where the language is capable of more than one reasonable construction." *Porter v. Bd. of Trustees, Preston School Dist. No. 201,* 141 Idaho 11, 14, 105 P.3d 671, 674 (2004). "We have consistently held that where statutory language is unambiguous, legislative history and other extrinsic evidence should not be consulted for the purpose of altering the clearly expressed intent of the legislature." *Verska*, 151 Idaho at 893, 265 P.3d at 506 (quoting *City of Sun Valley v. Sun Valley Co.,* 123 Idaho 665, 667, 851 P.2d 961, 963 (1993)).

2. Whether the district court erred in ruling that non-city residents were entitled to vote in the election under UOCAVA.

The memorandum decision of the district court held that UOCAVA was meant to be applied equally to a citizen's right to vote absentee, regardless of whether an election was

federal, state, or municipal. The district court also noted that "[t]he issue will remain unsettled without further clarification by either a legislative body or appellate court."

Title 34, chapter 10 of the Idaho Code contains the general statutory provisions for absentee voting in Idaho. As it existed in 2009, I.C. § 34-1002 stated that: "A person may make application for an absent elector's ballot by use of a properly executed federal post card application as provided for in the laws of the United States known as uniformed and overseas citizens absentee voting act (UOCAVA, 42 U.S.C. 1973 ff, et seq.)."

Title 50, chapter 4 of the Idaho Code contains the specific statutory provisions for voting in municipal elections. At the time of the 2009 city election, I.C. § 50-443 read in pertinent part:

> Any registered elector may make written application to the city clerk for an official ballot or ballots of the kind or kinds to be voted at the election. The application shall contain the name of the elector, his home address and address to which such ballot shall be forwarded.
>
> . . .
>
> A person in the United States service may make application for an absent elector's ballot by use of a properly executed federal post card application as provided for in the laws of the United States known as 'Federal Voting Assistance Act of 1955.'

I.C. § 50-443, Repealed by S.L. 2009, ch. 341, § 112, eff. January 1, 2011.

The Federal Voting Assistance Act of 1955 (FVAA) is the short title for a federal voting law passed to ensure that members of the armed forces could more easily vote by absentee ballot. Aug. 9, 1955, ch. 656, 69 Stat. 584. The FVAA was amended several times and ultimately repealed in 1986. *Id.*, Sec. 203, Repeals. This repeal came in "[a]n Act to consolidate and improve provisions of law relating to absentee registration and voting in elections for Federal office by members of uniformed services and persons who reside overseas." *Id.* "This Act may be cited as the 'Uniformed and Overseas Citizens Absentee Voting Act.'" *Id.*, Sec. 101, Short Title. In terms of absentee voting, UOCAVA took the place of FVAA in federal law.

To determine the effect of such a repeal, this Court has previously relied upon a general rule of statutory construction that states:

> Where one statute adopts the particular provisions of another by a specific and descriptive reference to the statute or provisions adopted, the effect is the same as though the statute or provisions adopted had been incorporated bodily into the adopting statute. When so adopted, only such portion is in force as relates to the particular subject of the adopting act, and as is applicable and appropriate thereto. Such adoption takes the statute as it exists at the time of adoption and

8

does not include subsequent additions or modifications of the statute so taken unless it does so by express intent.

*Nampa & Meridian Irr. Dist. v. Barker*, 38 Idaho 529, 533, 223 P. 529, 530 (1924) (citing *Sutherland on Statutory Construction*, § 405 (John Lewis ed., 2d ed.1904)). This principle of construction is in accordance with interpretations from other jurisdictions. *See Hanson v. City of Omaha*, 61 N.W.2d 556, 557 (Neb. 1953); *Union Cemetery v. City of Milwaukee*, 13 Wis. 2d 64, 67, 108 N.W.2d 180, 181 (Wis. 1961); *Egbert v. City of Dunseith*, 24 N.W.2d 907, 910 (N.D. 1946); *United States v. Myers*, 553 F.3d 328, 331 (4th Cir. 2009). In *Myers*, the Fourth Circuit Court of Appeals used the same principle of statutory construction:

> 'Where a reference statute incorporates the terms of one statute into the provisions of another act, the two statutes coexist as separate distinct legislative enactments, each having its appointed sphere of action.' Sutherland Statutory Construction, supra, § 23:33 (internal quotation marks omitted). Accordingly, '[a]s neither statute depends upon the other's enactment for its existence, the repeal of the provision in one enactment does not affect its operation in the other statute.'

*Myers*, 553 F.3d at 331.

Here, given the plain language in I.C. § 50-443, UOCAVA does not govern the process for absentee voting in municipal elections. However, the above listed principles of statutory construction confirm an argument made by Brannon on appeal—that the FVAA 1955 provisions pertaining to persons in the United States service continued in force. The 1986 repeal of FVAA had no impact on the operation of FVAA's absentee voting provisions in the context of I.C. § 50-553. Therefore, those provisions still governed absentee voting in the Coeur d'Alene 2009 general election.[1]

In terms of application to this case, there was no evidence presented at trial—and no argument made on appeal—that the five disputed votes were illegal under the provisions of FVAA. Although the district court erred in concluding that UOCAVA applied to the disputed votes, Brannon failed to meet his burden for proving that the five votes were illegal. Therefore, we hold that UOCAVA was not applicable to the 2009 general election, but in the absence of any evidence to the contrary, we uphold on other grounds the district court's determination that the disputed votes were legally cast.

---

[1] As noted above, I.C. § 50-443 was repealed effective January 1, 2011. S.L. 2009, ch. 341, § 112. Currently, absentee voting in Idaho municipal elections is governed by Title 34, chapter 10 of the Idaho Code, which incorporates UOCAVA in the procedure for absentee voting.

9

**C. Whether the district court erred in refusing to order non-city residents who returned absentee ballots to testify as to their residence and for whom they cast their vote.**

On August 16, 2010, Brannon filed a motion to compel witnesses to attend the trial. The motion sought to compel attendance of the five UOCAVA voters and asserted their testimony "is required to establish that they were not qualified electors in the said election." The district court denied the motion.

Brannon argues that the district court erred when it refused to order non-city residents who had returned absentee ballots to testify as to their residence and for whom they voted. In response, Kennedy calls the issue ridiculous, and argues that the district court correctly ruled against such an order.

1. Standard of Review

"This Court exercises free review over questions of law." *Fuller*, 150 Idaho at 851, 252 P.3d at 1269.

2. Whether the district court erred in refusing to order non-city residents who returned absentee ballots to testify as to their residence and for whom they cast their vote.

Argument on the motion to compel was heard on August 31, 2010. During argument, Brannon's counsel reiterated his stance on the issue, and the district court responded with an articulation of its position:

> Kelso: I find it inconceivable that a person who claims to be a resident of the city of Coeur d'Alene can't be compelled to appear in court in the city of their residence. If they're not residents, I don't expect them to show up. I think it's pretty clear from the nonservice that none of them are and they all voted for Kennedy. Five. I'm just puzzled why Kennedy is so concerned about keeping these people who voted for him from Canada and California out of the courtroom.

> The Court: Well, this is civil litigation and it's being approached by the court as civil litigation and if you need to bring witnesses in from out of state, the way you always bring witnesses in from out of state, that's not up to the court to issue orders and send airline tickets and make all the arrangements. The court isn't in the business of recruiting and providing witnesses for particular parties. The parties themselves go out and do that. That's the way it's handled in civil litigation. And to devise a different rule for elections just because without any legal authority in the United States Jurisprudence that in elections, courts can require people to pick up their bags from New York and come at their own costs to Coeur d'Alene is just – I – I just kind of – just kind of end up muttering to myself.

> So I'm not in the habit of issuing orders for which I have no legal authority, no reason to do, and which I think in my own opinion should be utterly disregarded by the person that receives it.

10

The district court then denied the motion to compel.

Brannon brought the motion to compel under I.C. § 34-2013, which defines the procedure in election contests:

> The proceedings shall be held according to the Idaho Rules of Civil Procedure so far as practicable, but shall be under the control and direction of the court, which shall have all the powers necessary to the right hearing and determination of the matter; to compel the attendance of witnesses, swear them and direct their examination; to punish for contempt in its presence or by disobedience to its lawful mandate; to adjourn from day to day; to make any order concerning immediate costs, and to enforce its orders by attachment. It shall be governed by the rules of law and evidence applicable to the case.

Brannon argues that under I.C. § 34-2013, the district court has the power to compel testimony beyond the limitations found in the Idaho Rules of Civil Procedure.

Under the language in I.C. § 34-2013, the district court was bound by the Idaho Rules of Civil Procedure as far as practicable. Additionally, I.C. § 34-2014 states that "[s]ubpoenas for witnesses may be issued pursuant to the Idaho Rules of Civil Procedure." Idaho Rule of Civil Procedure 45(g) states that "[a]t the request of any party subpoenas for attendance at a hearing or trial shall be issued as provided by Rule 45(a), and such subpoenas for a hearing or trial in a district court or magistrates division may be served at any place within the state." The district court has no personal jurisdiction outside of the state boundaries except as provided by the Idaho long-arm statute. *See Knutsen v. Cloud*, 142 Idaho 148, 150, 124 P.3d 1024, 1026 (2005).

Idaho's long-arm statute, I.C. § 5-514, defines the acts that would subject non-residents to the jurisdiction of the courts of this state. However, the statute applies only to parties in an action, not to non-party witnesses. *See Knutsen*, 142 Idaho at 150, 124 P.3d at 1026; *Blimka v. My Web Wholesaler, LLC*, 143 Idaho 723, 726, 152 P.3d 594, 597 (2007). If Brannon wanted testimony from the five disputed voters, he could not rely upon the court to provide it.

The district court was bound under I.C. § 34-2013 to follow the Idaho Rules of Civil Procedure as far as practicable. There is no rule of civil procedure that would require the district court to provide subpoenas to out-of-state non-party witnesses. Therefore, we hold that the district court did not err when it denied Brannon's motion to compel non-city residents to testify at trial.

**D. Whether the district court erred in dismissing Brannon's malconduct claim.**

In a pretrial hearing, the district court dismissed the issue of malconduct and denied Brannon's motion to file a third amended complaint. At trial, the motion was renewed, but it

was denied by the district court in the memorandum opinion. In addressing malconduct, the memorandum opinion stated that the motion to amend is denied "on the grounds the County was not a party." The district court also addressed the merits of the claim in the alternative:

> However, this Court finds that there is insufficient evidence in the record as a matter of law to find malconduct, and that the motion to amend also be denied on the alternative grounds that, even if the County were a party, the irregularities alleged in the proposed amended complaint simply fail to state a claim for malconduct under § 34-2001(1).

Brannon argues that the district court erred in dismissing the claim of malconduct and by refusing to allow Brannon to amend the complaint to properly assert a claim of malconduct. In response, Kennedy argues that Brannon's amended complaint made no reference to the appropriate statute for malconduct, and that the evidence on the record establishes that no malconduct occurred.

Title 34, chapter 20 of the Idaho Code articulates the grounds for, and procedure governing, election contests in Idaho for elections other than legislative or state executive offices:

> The election of any person to any public office, the location or relocation of a county seat, or any proposition submitted to a vote of the people may be contested:
>
> 1. For malconduct, fraud, or corruption on the part of the judges of election in any precinct, township or ward, or of any board of canvassers, or any member of either board sufficient to change the result.
>
> . . .
>
> 5. When illegal votes have been received or legal votes rejected at the polls sufficient to change the result.
>
> 6. For any error in any board of canvassers in counting votes or in declaring the result of the election, if the error would change the result.

I.C. § 34-2001. Idaho Code section 34-2001 does not define the term "malconduct," but a working definition was previously articulated by this Court.

> Our statute does not define what constitutes malconduct of the officers of election, but it must be held that any proceedings which result in unfair elections, that deprive the qualified elector of the opportunity of peaceably casting his ballot and having it counted as cast, or that permit illegal votes to be cast and counted, are within the statutory provisions.

*Chamberlain v. Woodin*, 2 Idaho 642, 645, 23 P. 176, 178 (1890).

The majority of the evidence, as well as the thrust of Brannon's amended complaint and subsequent argument, is aimed not at malconduct, but rather the grounds in I.C. § 34-2001(5) and (6). That is, whether any votes were illegal, or whether there were any errors in vote counting or canvassing. Brannon's brief on appeal contains an extensive argument aimed at establishing that malconduct occurred in the election. However, the evidence offered in support at trial alleges neither fraud nor malconduct, but instead addresses alleged misinterpretations of the law, failure to follow election law to the letter, and errors in counting the absentee ballots.

This Court previously held that "[a] showing that election officials failed to follow every election procedure precisely, without more, is insufficient under I.C. § 34-2101(1)." *Noble v. Ada Cnty. Elections Bd.*, 135 Idaho 495, 504, 20 P.3d 679, 688 (2000). While I.C. § 34-2101(1) pertains to malconduct in elections for legislative or state executive office, it is otherwise the equivalent of I.C. § 34-2001(1) and contains nearly identical language. In *Noble*, the election contestant received fifty-one fewer votes than his opponent according to the official vote count. *Id*. at 497, 20 P.3d at 681. The contestant questioned the legality of over 200 ballots, alleging malconduct and numerous irregularities that caused illegal ballots to be counted. *Id*. at 498, 20 P.3d at 682. For Noble to succeed, he would have had to show that at least fifty-one illegal votes had been counted. *Id*. at 501, 20 P.3d at 685. This Court held that only ten votes were in dispute, and that the election contestant's "evidence does not demonstrate that the election process was unfair or that the results are contrary to the actual will of the electorate." *Id*. at 504, 20 P.3d at 688. The holding in *Noble* is consistent with that in *Chamberlain*. 2 Idaho 642, 23 P. 176.

As the district court noted, *Chamberlain* is factually distinguishable from the instant case because the malconduct there involved voter intimidation, the arrest of legal voters, and the large number of possibly illegal voters that voted without challenge. *Id*. at 645, 23 P. at 178.

Here, there is no evidence in the record that establishes, or even attempts to establish, that any irregularities resulted from malconduct, corruption, or coercion. Nothing on the record would constitute the "more" required under *Noble* and illustrated in *Chamberlain*. There is no evidence on the record that would clearly establish that the five disputed votes were cast and counted illegally. Additionally, there is no evidence that any of the alleged irregularities would have changed the outcome of the election, or that the current result is "contrary to the actual will of the electorate." *Noble*, 135 Idaho 504, 20 P.3d at 688. Brannon failed to meet his burden,

13

therefore we hold that the district court did not err when it dismissed Brannon's claim of malconduct.

**E. Whether the district court applied an incorrect burden of proof for election contests.**

Brannon continuously argued before the district court and now argues that the district court failed to properly shift the burden of proof to the defendant after he made a *prima facie* argument and met his burden of showing that illegal votes had been cast in sufficient numbers to potentially affect the outcome of the election. In response, Kennedy argues that the burden never shifted because Brannon failed to present sufficient evidence at trial to support his claims.

    1.   Standard of Review

"This Court exercises free review over questions of law." *Fuller*, 150 Idaho at 851, 252 P.3d at 1269.

    2.   Whether the district court erred when it did not shift the burden of proof to defendants.

The issue of burden shifting was addressed in a December 7, 2010 post-trial hearing. At the hearing the district court stated that:

> [T]here just isn't any legal basis for this court to find that in this case I'm going to shift the burden of proof from the plaintiff to the defendant.
>
> The – with the illegal voters, the – even if you had . . . a three vote difference, even if you found that there were four illegal voters, if you didn't know how they vote, you don't shift the burden anyway.

Brannon now argues that the district court erred and that there is Idaho case law that establishes the burden of proof in election cases.

The burden on proof issue in an election context was first discussed by this Court in *Jaycox v. Varnum*. 39 Idaho 78, 226 P. 285 (1924). In *Jaycox*, this Court found that the election contestant lost to his opponent by two votes, with an additional three illegal votes that could not be attributed to either candidate. *Id*. at 87, 226 P. at 288. Even though the number of disputed ballots exceeded the margin of victory, this Court held that the contestant failed to prove that the result of the election would have been different if these illegal votes had not been received. *Id*. at 92, 226 P. at 289.

> The three illegal votes may have been cast for appellant or the third candidate, or divided among them. In order to overcome the prima facie effect of the returns, it would seem incumbent on *appellant to prove not only the illegal votes, but also for whom they were cast.* Both these elements of proof were required to show that the illegal votes affected the result, and that but for them appellant would have

14

been elected. It would be neither just nor logical to put the contestee at a disadvantage, because contestant was unable to sustain the burden of proof which rested upon him, contestee not being responsible for that fact. The rule that the party who is seeking affirmative relief has the burden of proof is one which necessarily underlies all our procedure. A party may have a just cause, and lose the benefit of his evidence through causes not of his making and beyond his control; yet we hold he is not entitled to recover because of failure of proof. It is true that there is not a complete analogy between an election contest and the ordinary civil proceeding, because in the former the public have an interest lacking in the latter. Nevertheless, we conclude that the general rule as to burden of proof must apply to election contests.

*Id*. (emphasis added). More recently, *Jaycox* was quoted in *Noble*:

I.C. § 34-2101(5) allows an election to be contested '[w]hen illegal votes have been received or legal votes rejected at the polls sufficient to change the result.' The party contesting the election must initially prove that the number of illegal votes cast could have changed the result. Since Risch won by fifty-one votes, Noble had to show that at least fifty-one illegal votes had been counted. The district judge found that only the ten absentee ballots where the elector had failed to sign the affidavit were illegal, and should not have been counted.

Noble introduced evidence at trial indicating that an undetermined number of unused ballots from prior elections were removed from a warehouse and used to make up for ballot shortfalls. After fifty of the ballots were used, the remaining ballots were returned to the warehouse. Noble claims that because there is no record of how many were taken from the warehouse and how many were returned, some of these ballots could have been cast illegally. The district judge found that Noble had presented no evidence that a single one of these ballots had been improperly cast.

. . .

Weighing evidence and determining the credibility of witnesses is properly left to the trial court. On appeal, this Court finds no basis for overturning the district judge's determination that the above evidence failed to show that any illegal votes had been cast.

135 Idaho at 500–01, 20 P.3d at 684–85 (internal citations omitted). In *Noble*, this Court held that the party contesting the election had the burden to show that enough illegal votes were counted to change the result of the election. *Id*.

Here, Kennedy defeated Brannon by five votes according to the official election results. At trial, Brannon established that six votes were cast illegally. One of the illegal votes was for Brannon, two were for Kennedy, one vote was probably for Kennedy, and the last two were undetermined. The district court thus found that Kennedy prevailed by three votes, instead of five.

15

The only remaining issue of illegal votes centered on the five voters that voted absentee under UOCAVA. After hearing the evidence, the district court found that all five voters were legal voters. As discussed in section III.B above, the absentee voter provisions of UOCAVA did not apply to the City election and the district court erred in holding otherwise. However, there is no evidence in the record showing for whom those five voters actually voted, or whether those votes were illegal under the proper statute, FVAA. In the absence of such evidence, the standard applied in *Jaycox* and reinforced by *Noble* has not been met. Therefore, we hold that the district court did not err, that the burden of proof remained on Brannon, and that Brannon failed to meet that burden.

   3. <u>The factual issues of the accuracy of official vote count and the adequacy of the election canvass are moot since Brannon failed to meet his burden of proof.</u>

On appeal, Brannon challenges two factual findings by the district court. First, Brannon argues that there is no competent evidence in the record to substantiate the district court's finding that 2051 envelopes, each containing one legal absentee ballot, were received. And second, Brannon argues that there was no competent evidence to support the district court's finding that there was no error in counting votes or in declaring the election result.

Idaho Code section 34-2001 states that:

The election of any person to any public office, the location or relocation of a county seat, or any proposition submitted to a vote of the people may be contested:

. . .

5. When illegal votes have been received or legal votes rejected at the polls sufficient to change the result.

6. For any error in any board of canvassers in counting votes or in declaring the result of the election, if the error would change the result.

As previously stated, there is no evidence that the five disputed votes are illegal under the applicable laws, or for whom the five votes were cast. Therefore, there is no evidence on the record that would be sufficient to change the election result under the standard set forth in *Jaycox*. 39 Idaho at 92, 226 P. at 289. Although there is some question about the validity of Brannon's allegations, there is no question that Brannon failed to introduce evidence that any of the alleged errors changed the election result. In the absence of such evidence, the factual findings in regards to the number of votes or the method of vote counting, is moot.

   4. <u>The legal issues regarding the delegation of the City election to Kootenai County, and the dismissal of Brannon's claim to set aside the entire election, are also moot.</u>

16

On appeal Brannon argues that the delegation agreement between the City and Kootenai County was in violation of the applicable municipal election law, I.C. § 34-1401.[2] According to Brannon, from 1993 until 2011, Idaho municipal election laws did not expressly permit the delegation of the City's or the city clerk's election duties to the county. Also in his brief on appeal, Brannon states that he has always viewed this election contest as a challenge to the entire 2009 election, and that the district court erred when it dismissed his challenge as it pertains to the entire general election. In support, Brannon cites his amended complaint, which alleges "acts or failures to act" on the part of the city and the city clerk. In response, the City argues that there was no evidence introduced to suggest that the entire election should be disregarded, and that the focus of the case is Seat 2.

As stated above, there is no evidence on the record that would be sufficient to change the election result under the standard set forth in *Jaycox*. 39 Idaho at 92, 226 P. at 289. In the absence of such evidence, the legal questions regarding the delegation of election duties or the decision of the district court to dismiss Brannon's general election claim, are moot.

**F. Whether the district court erred in denying the motion for new trial or amended judgment.**

On November 8, 2010, Brannon filed a motion for new trial pursuant to I.R.C.P. 59(a)(6) and (7), or in the alternative to amend the judgment pursuant to I.R.C.P. 59(e). After argument by the parties, the district court denied the motion.

1. Standard of Review.

"On appeal, this Court reviews a district court's decision to grant or deny a new trial for an abuse of discretion and will not disturb that decision absent a manifest abuse of this discretion." *Johannsen v. Utterbeck*, 146 Idaho 423, 429, 196 P.3d 341, 347 (2008) (citing *Lanham v. Idaho Power Co.,* 130 Idaho 486, 497–98, 943 P.2d 912, 923–24 (1997)).

> To determine whether there is an abuse of discretion this Court considers whether (1) the court correctly perceived the issue as one of discretion; (2) the court acted within the boundaries of such discretion and consistently with legal standards applicable to specific choices; and (3) the court reached its decision by an exercise of reason.

---

[2] It should be noted that Idaho Code section 34-1401 was amended subsequent to the 2009 election cycle. S.L. 2009, ch. 341, § 59, eff. Jan. 1, 2011. Currently, I.C. § 34-1401 states that "[m]unicipal elections shall be conducted under the provisions of this chapter except for the specific provisions of chapter 4, title 50, Idaho Code." Idaho Code Section 50-403 currently states that "[f]or each city, the county clerk of the county is the chief elections officer and shall exercise general supervision of the administration of the election laws in the city . . . ."

*Lee v. Nickerson*, 146 Idaho 5, 9, 189 P.3d 467, 471 (2008).

    2. <u>Whether the district court erred in denying the motion for new trial or amended judgment.</u>

Brannon made two arguments in his motion for new trial. First, that there was insufficient evidence at trial to justify the verdict. And second, that the district court erred by not shifting the burden of proof to the defendant after Brannon introduced sufficient evidence of ballot irregularities to shift the burden to the City.

Idaho Rule of Civil Procedure 59(a) states that:

> A new trial may be granted to all or any of the parties and on all or part of the issues in an action for any of the following reasons:
>
> . . .
>
> 6. Insufficiency of the evidence to justify the verdict or other decision, or that it is against the law.
>
> 7. Error in law, occurring at the trial. . . . Any motion based on subdivisions 6 or 7 must set forth the factual grounds therefor with particularity. On a motion for new trial in an action tried without a jury, the court may open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new findings and conclusions, and direct the entry of a new judgment.

Argument on the motion was heard on December 7, 2010, and the district court denied the motion for new trial or amended judgment on January 4, 2011. The order contained no explanation for the denial, however the hearing transcript contains extended reasoning from the district court.

In his motion for new trial, Brannon attached five absentee ballot envelopes intended to cast doubt on the official absentee vote total. However, the district court refused to reopen the trial to accept new evidence. "The fact is that none of the absentee return envelopes were in evidence at the trial. If someone submits an affidavit after the trial regarding putting something in that they could have put in during the trial . . . the justice system simply doesn't work." On the issue of Judge Marano's findings, the district court stated that "I found that he counted 2,051 absentee ballots. That's the finding. That's what he testified to."

Addressing the burden of proof, the district court stated that it "will always be on the plaintiff." As applied to any discrepancy in ballots, the district court remarked:

> All 10 [potentially illegal votes] could have been for Brannon. So there is a request here for the Court to make a finding that these excess ballots, although

18

they were all voted for the loser, who lost, nonetheless since they were excess ballots, let's have a new election. That's absurd. You'd have to know how the ballots were cast to make much sense.

Given the reasons stated in the above sections, the district court acted within its discretion when it denied the motion for new trial. Additionally, the district court's analysis was consistent with the controlling precedent in *Jaycox*, 39 Idaho at 92, 226 P. at 289, and *Noble*, 135 Idaho at 500–01, 20 P.3d at 684–85. The burden of proof would only shift upon a finding of enough illegal votes to change the outcome of the election, and there was no evidence before the district court that would necessitate the burden shift. No evidence was presented on whether the absentee votes were illegal under FVAA, nor any evidence for whether the disputed votes were cast for Brannon or Kennedy. Additionally, the district court is not compelled to reopen the evidence, I.R.C.P. 59(A)(7) simply states that the court may reopen the evidence. The district court reached its conclusion through an exercise of reason, and entered a decision within the bounds of its discretion. Therefore, we hold that the district court did not err when it denied Brannon's motion for new trial.

**G.  Whether the City is entitled to costs and fees on appeal.**

The City argues that it is entitled to costs on appeal under I.C. § 34-2036, I.R.C.P. 11, and I.A.R. 40, and attorney fees on appeal under I.C. § 12-120 and I.A.R. 41. Kennedy argues that he is entitled to attorney fees under I.C. § 12-121. In response, Brannon argues that the City failed to provide a basis for an award of fees under I.C. § 12-120. As to fees under I.C. § 12-121, Brannon argues that the appeal was not brought, pursued, or defended frivolously or without foundation: "In any deliberations of this matter the Court is asked to consider the statewide significance of the issues raised on this appeal and the extraordinary effort that was necessary to compile and present these issues with proper citation to the record, statutes, and case law to this Court."

Idaho Code section 12-121 states that:

> In any civil action, the judge may award reasonable attorney's fees to the prevailing party or parties, provided that this section shall not alter, repeal or amend any statute which otherwise provides for the award of attorney's fees. The term 'party' or 'parties' is defined to include any person, partnership, corporation, association, private organization, the state of Idaho or political subdivision thereof.

On the issue of fees under I.C. § 12-121, "a party is entitled to attorney's fees if the appeal merely invites the appellate court to second guess the trial court on the weight of

19

evidence. Attorney's fees may also be awarded if the appeal was brought or defended frivolously, unreasonably, or without foundation." *Crowley v. Critchfield*, 145 Idaho 509, 514, 181 P.3d 435, 440 (2007) (internal citation omitted). However, "[i]f there is a legitimate, triable issue of fact or a legitimate issue of law, attorney fees may not be awarded under this statute even though the losing party has asserted factual or legal claims that are frivolous, unreasonable, or without foundation." *Thomas v. Madsen*, 142 Idaho 635, 639, 132 P.3d 392, 396 (2006).

Since the proper application of UOCAVA is a legitimate and triable issue of law, we decline to award attorney fees.

## IV. CONCLUSION

We find that the district court did not err when it denied Brannon's motion to disqualify. We also hold that the UOCAVA absentee voter requirements did not apply to municipal elections held prior to 2011, but that there is insufficient evidence in the record to conclude that the five disputed votes in this case were illegal. We hold that the district court did not err when it refused to order non-city residents to testify about their residency at trial. We also hold that the district court did not err in dismissing Brannon's claims of malconduct.

Further, we hold that the district court applied the proper burden of proof, and that the additional evidentiary and legal issues from trial are moot. We hold that the district court properly denied Brannon's motion for new trial.

Finally, we award no attorney fees on appeal. Costs to Respondents.

Justices EISMANN, J. JONES, W. JONES and HORTON, **CONCUR.**