## IN THE SUPREME COURT OF THE STATE OF IDAHO
### Docket No. 46545

BRENT REGAN, a qualified elector of the State of Idaho,

    Petitioner,

v.

LAWERENCE DENNEY, Secretary of State of the State of Idaho, in his official capacity,

    Respondent.

DELEENA FOSTER, an individual, PAMELA BLESSINGER, an individual, BRUCE BELZER, MD, an individual, and the IDAHO MEDICAL ASSOCIATION, INC., an Idaho non-profit corporation,

    Intervenors-Respondents.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Boise, January 2019

Opinion filed: February 5, 2019

Karel A. Lehrman, Clerk

---

Original Filing.

Petition for review <u>dismissed</u> and request for writ of mandamus <u>denied.</u>

Bryan D. Smith, Idaho Falls, argued for petitioner.

Hon. Lawrence G. Wasden, Idaho Attorney General, Boise, for petitioner. Brian P. Kane argued.

Givens Pursley, Boise, for Intervenors. Kenneth R. McClure argued.

---

BURDICK, Chief Justice.

Petitioner Brent Regan asserts that Idaho Code section 56-267, a statute enacted pursuant to the initiative power retained by the people of Idaho in Article III, section 1 of the Idaho Constitution, violates Idaho's Constitution by delegating future lawmaking authority regarding Medicaid expansion to the federal government. Regan requests that this Court declare section 56-

1

267 unconstitutional and also requests that this Court issue a writ of mandamus directing the Secretary of State Lawerence Denney to remove section 56-267 from the Idaho Code. We dismiss Regan's petition and deny his request for a writ of mandamus.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

In the November 6, 2018 election, the Idaho electorate passed a ballot initiative, known as Proposition 2, to expand Medicaid eligibility in Idaho. On November 20, 2018, the Acting Governor issued a proclamation that Proposition 2 had passed, and subsequently the Idaho Code was amended to add section 56-267 which reads as follows:

> 56-267. MEDICAID ELIGIBILITY EXPANSION. (1) Notwithstanding any provision of law or federal waiver to the contrary, the state shall amend its state plan to expand Medicaid eligibility to include those persons under sixty-five (65) years of age whose modified adjusted gross income is one hundred thirty-three percent (133%) of the federal poverty level or below and who are not otherwise eligible for any other coverage under the state plan, in accordance with sections 1902(a)(10)(A)(i)(VIII) and 1902(e)(14) of the Social Security Act.
>
> (2) No later than 90 days after approval of this act, the department shall submit any necessary state plan amendments to the United States Department of Health and Human Services, Centers for Medicare and Medicaid Services to implement the provisions of this section. The department is required and authorized to take all actions necessary to implement the provisions of this section as soon as practicable.

A brief discussion of Medicaid history is helpful to understanding the genesis of Proposition 2. The Medicaid program was established in 1965 to provide medical care to indigent people as well as people "'whose income and resources are insufficient to meet the costs of necessary medical services' including nursing home care." *Stafford v. Idaho Dep't of Health & Welfare*, 145 Idaho 530, 533–34, 181 P.3d 456, 459–60 (2008) (quoting *Cleary v. Waldman*, 167 F.3d 801, 805 (3rd Cir.1999)).

> The Medicaid program is administered by the states on a matching-fund basis, with the lion's share of support coming from the federal government. The states do not get the matching funds without strings. As one might suspect, the states must meet certain requirements in order to obtain the federal funds. Medicaid is a cooperative federal-state venture through with [sic] the states operate programs of their own design. These programs must, however, be consistent with federal standards and regulations.

*Id.* at 534, 181 P.3d at 460 (citation and quotation marks omitted).

When the Patient Protection and Affordable Care Act (ACA) was enacted by Congress in 2010, it contained a requirement that, in order to keep existing Medicaid funding, states had to

expand Medicaid "to cover *all* individuals under the age of 65 with incomes below 133 percent of the federal poverty line." *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 576 (2012) (emphasis in original). This would have significantly changed Medicaid, as the existing "Medicaid program offer[ed] federal funding to States to assist pregnant women, children, needy families, the blind, the elderly, and the disabled in obtaining medical care." *Id.* at 519 (citing 42 U.S.C. § 1396d(a)). Idaho joined with twenty-five other states to challenge the mandatory provision. *Id.* at 520. In its *Sebelius* decision, the U.S. Supreme Court held that the provision in the ACA that required states to expand Medicaid was unconstitutional, but held that states could voluntarily expand Medicaid. *Id.* at 587. The ACA also created a system of insurance subsidies for individuals with household incomes of 100 percent to 400 percent of the federal poverty line, which was not affected by the Court's decision in *Sebelius*. Thus, after the U.S. Supreme Court's ruling in *Sebelius* struck down the mandatory Medicaid expansion in the ACA, there existed a "Medicaid gap" for people who did not qualify for existing Medicaid, but also did not have an income of at least 100% of the federal poverty level so as to qualify for insurance subsidies. People in the "gap" were left with no affordable healthcare options.

Proposition 2, now Idaho Code section 56-267, expands Medicaid eligibility in Idaho to cover Idaho citizens who fall in the "Medicaid gap" by expanding coverage in Idaho to citizens who are under 65 years of age, whose modified adjusted gross income is 133% of the federal poverty level or below, and who are not otherwise eligible for Medicaid coverage under the existing state plan. Section 56-267 directs the Department of Health and Welfare (the Department) to submit the necessary amendments to the state Medicaid plan to the United States Department of Health and Human Services, Centers for Medicare and Medicaid Services. I.C. § 56-267. Section 56-267 directs the Department to do this within 90 days after approval of the act. *Id.*

On November 21, 2018, after section 56-267 had become law, Petitioner Brent Regan filed a "Petition for Review" with this Court, seeking a declaration that section 56-267 is unconstitutional. Regan contends section 56-267 is unconstitutional because it delegates future lawmaking authority to the federal government. Regan's argument is centered on the portion of section 56-267 which extends Medicaid coverage "in accordance with sections 1902(a)(10)(A)(i)(VIII) and 1902(e)(14) of the Social Security Act." Regan contends that the federal government could change provisions in those sections of the Social Security Act, and that

3

Idaho would be bound by such changes. Thus, Regan contends section 56-267 unconstitutionally delegates future lawmaking authority to the federal government.

## II.   STANDARD OF REVIEW

> The Idaho Constitution and Idaho Code grant this Court original jurisdiction to issue writs of mandamus. Idaho Const. art. V, § 9; I.C. § 1-203. Under the Idaho Appellate Rules, "[a]ny person may apply to the Supreme Court for the issuance of any extraordinary writ or other proceeding over which the Supreme Court has original jurisdiction." I.A.R. 5(a). Such writs "may be issued . . . to compel the performance of an act which the law especially enjoins as a duty resulting from an office, trust or station; or to compel the admission of a party to the use and the enjoyment of a right or office to which he is entitled, and from which he is unlawfully precluded by such inferior tribunal, corporation, board or person." I.C. § 7-302.

*Leavitt v. Craven*, 154 Idaho 661, 665, 302 P.3d 1, 5 (2012).

"Because 'constitutional questions and questions of statutory interpretation are questions of law,' this Court exercises free review over both." *Id.* (quoting *Stuart v. State*, 149 Idaho 35, 40, 232 P.3d 813, 818 (2010)). In cases challenging the constitutionality of a statute:

> "There is a presumption in favor of the constitutionality of the challenged statute or regulation, and the burden of establishing that the statute or regulation is unconstitutional rests upon the challengers. An appellate court is obligated to seek an interpretation of a statute that upholds it [sic] constitutionality. The judicial power to declare legislative action unconstitutional should be exercised only in clear cases."

*Id.* (quoting *Stuart*, 149 Idaho at 40, 232 P.3d at 818).

## III.   ANALYSIS

### A. Notwithstanding notable procedural deficiencies, this Court will consider Regan's petition.

Regan contends that this Court "is the proper forum for review" based on Idaho Code section 34-1809(4). Regan also argues this Court has jurisdiction over the matter because Regan is seeking an order to have Denney remove section 56-267 from the Idaho Code. Denney maintains that this Court lacks jurisdiction to consider the petition, and contends Idaho Code section 34-1809(4) cannot expand the Court's original jurisdiction set by the Constitution. Intervenors contend Regan lacks standing to bring his controversy before this Court. For reasons to be discussed, we will exercise our original jurisdiction under Article V, section 9 of the Idaho Constitution.

4

1. Idaho Code section 34-1809(4) is unconstitutional and cannot create original jurisdiction in this Court.

Section 34-1809(4) provides that, "[a]ny qualified elector of the state of Idaho may, at any time after the attorney general has issued a certificate of review, bring an action in the [S]upreme [C]ourt to determine the constitutionality of any initiative." However, section 34-1809(4) unconstitutionally attempts to broaden this Court's jurisdiction. "The principle that neither the legislature nor the executive can in any way regulate or alter the Supreme Court's jurisdiction is basic to the doctrine of separation of powers." *Mead v. Arnell*, 117 Idaho 660, 663, 791 P.2d 410, 413 (1990) (citing Idaho Const. art. II, § 1). As this Court has said, "[t]he jurisdiction of this court is fixed by the Constitution and cannot be broadened or extended by the Legislature." *Neil v. Pub. Utilities Comm'n of Idaho*, 32 Idaho 44, 52, 178 P. 271, 273 (1919).

This Court has already determined that section 34-1809(4) cannot expand its jurisdiction in a 2003 Order regarding a petition to determine the constitutionality of Idaho Code sections 67-429B and 67-429C, enacted in Proposition 1, the Indian Gaming Initiative. In the 2003 Order, this Court determined section 34-1809(4) did not confer original jurisdiction to this Court, stating that the legislature had no power to extend this Court's original jurisdiction. The petitioners in that case cited to Article III, Section 1 of the Idaho Constitution contending that provision "authorizes the legislature to grant original jurisdiction to this Court in matters regarding initiatives." This Court rejected that argument and determined section 34-1809(4) did not confer original jurisdiction for the Court to decide the petition. Similarly, in *Noh v. Cenarrusa*, this Court stated that "Idaho Code § 34-1809 cannot compel the Court to decide a case that lacks a judiciable controversy." 137 Idaho 798, 803, 53 P.3d 1217, 1222 (2002). Justice Kidwell, concurring in the majority opinion, stated he would find section 34-1809(4) unconstitutional because it violates the separation of powers doctrine embodied in the Idaho Constitution. *Id.* He noted that the Legislature in passing the statute was attempting to instruct this Court to hear cases that were otherwise not justiciable. *Id.* at 804, 53 P.3d at 1223. We find Justice Kidwell's reasoning persuasive as to the issue before us.

Based on the above, we hold that Idaho Code section 34-1809(4) is unconstitutional, as it constitutes an attempt by the Legislature to broaden this Court's jurisdiction in contravention of the separation of powers doctrine in the Idaho Constitution. Idaho Const. art. II, § 1; *Mead*, 117 Idaho at 663, 791 P.2d at 413. Accordingly, section 34-1809(4) does not create jurisdiction for this Court to hear Regan's petition.

2. This Court will exercise original jurisdiction under Article V, section 9 of the Idaho Constitution.

This Court has "original jurisdiction to issue writs of mandamus, certiorari, prohibition, and habeas corpus, and all writs necessary or proper to the complete exercise of its appellate jurisdiction." Idaho Const. art. V, § 9. We have recognized that "this Court may 'exercise jurisdiction to review a petition for extraordinary relief where the petition alleges sufficient facts concerning a possible constitutional violation of an urgent nature.'" *Coeur D'Alene Tribe v. Denney*, 161 Idaho 508, 513–14, 387 P.3d 761, 766–67 (2015) (quoting *Idaho Watersheds Project v. State Bd. of Land Comm'rs*, 133 Idaho 55, 57, 982 P.2d 358, 360 (1999)) (granting a writ of prohibition for a House Joint Resolution that proposed to amend the Idaho Constitution); *see also Keenan v. Price*, 68 Idaho 423, 429, 195 P.2d 662, 664 (1948) (accepting jurisdiction because of the "importance of the question[] presented" and the "urgent necessity for immediate determination"). Moreover, "this Court has repeatedly held that mandamus is not a writ of right and the allowance or refusal to issue a writ of mandate is discretionary." *Coeur D'Alene Tribe*, 161 Idaho at 512, 387 P.3d at 765. Thus, we recognize the discretionary nature of this exercise; it is not a prerogative that we exercise lightly, but one we reserve the right to exercise on a case by case basis when compelled by urgent necessity.

Here, Regan alleges a constitutional violation, contending section 56-267 violates Article III, section 1 of the Idaho Constitution. Regan's challenge is of an urgent nature due to the 90-day time requirement in section 56-267 during which the Department must submit the necessary state plan amendments to the Center for Medicare and Medicaid Services. Additionally, we recognize the need for a determination of the constitutionality of section 56-267 during the 2019 legislative session given the fast-approaching 90-day window for the Department to submit any necessary plan amendments, and the Legislature's need to consider funding for Medicaid expansion. Accordingly, due to the urgency of the alleged constitutional violation and the urgent need for an immediate determination, we will exercise our original jurisdiction over Regan's petition.

3. While Regan cannot satisfy traditional standing requirements, we will relax the ordinary standing requirements and exercise jurisdiction over Regan's petition.

Even with the Court assuming jurisdiction to consider Regan's claims, he must still establish standing to pursue those claims. As we have said, "[c]oncepts of justiciability, including standing, identify appropriate or suitable occasions for adjudication by a court." *Coeur*

6

*D'Alene Tribe*, 161 Idaho at 513, 387 P.3d at 766 (quoting *State v. Philip Morris, Inc.*, 158 Idaho 874, 881, 354 P.3d 187, 194 (2015)). "[T]he origin of Idaho's standing is a self-imposed constraint adopted from federal practice, as there is no 'case or controversy' clause or an analogous provision in the Idaho Constitution as there is in the United States Constitution." *Id.* (citing U.S. Const. art. III. § 2, cl. 1). "In order to satisfy the requirement of standing, a party must allege or demonstrate an injury in fact and a substantial likelihood that the judicial relief requested will prevent or redress the claimed injury." *Gibbons v. Cenarrusa*, 140 Idaho 316, 318, 92 P.3d 1063, 1065 (2002) (citation and quotation marks omitted). However, generally, "a citizen and taxpayer may not challenge a governmental enactment where the injury is one suffered alike by all citizens and taxpayers of the jurisdiction." *Noh*, 137 Idaho at 800, 53 P.3d at 1219 (quoting *Miles v. Idaho Power Co.*, 116 Idaho 635, 641, 778 P.2d 757, 763 (1989)).

However, in certain cases we will relax traditional standing requirements. In *Coeur D'Alene Tribe*, we relaxed the traditional standing requirements "where the petition allege[d] sufficient facts concerning a possible constitutional violation of an urgent nature." 161 Idaho at 513, 387 P.3d at 766; *see also Keenan*, 68 Idaho at 429, 195 P.2d at 664 (this Court accepted jurisdiction "because of the importance of the questions presented and the urgent necessity for immediate determination."). This Court also recognized the "willingness to relax ordinary standing requirements . . . where: (1) the matter concerns a significant and distinct constitutional violation, and (2) no party could otherwise have standing to bring a claim." *Coeur D'Alene Tribe*, 161 Idaho at 514, 387 P.3d at 767 (citing *Koch v. Canyon Cty.*, 145 Idaho 158, 162, 177 P.3d 372, 376 (2008)). We have stated that allegations "concern a significant and distinct constitutional violation" when a petitioner alleged violations in enacting laws and exercising veto power. *Id.*

Regan concedes he cannot satisfy the traditional standing requirements, but contends he has standing under Idaho Code section 34-1809(4). As determined above, section 34-1809(4) is unconstitutional and therefore cannot confer standing to Regan. However, even though Regan cannot demonstrate a distinct palpable injury sufficient to confer standing, due to the urgent nature of the alleged constitutional violations, we will relax the traditional standing requirements and consider Regan's petition. In so doing, we note the need for resolution of the constitutionality of this issue due to the 90-day requirement in section 56-267 for the Department

to submit the necessary plan amendments, as well as the need for resolution during the 2019 legislative session.

## B. Idaho Code section 56-267 is constitutional.

Regan contends that section 56-267 "unconstitutionally delegates future lawmaking power to the United States Government and agencies thereof." Specifically, Regan contends the portion of Section (1) of section 56-267 that reads "in accordance with sections 1902(a)(10)(A)(i)(VIII) and 1902(e)(14) of the Social Security Act" confers lawmaking authority to the federal government, thus rendering the statute unconstitutional. Regan argues that the federal government could change either the poverty level set out in 1902(a)(10)(A)(i)(VIII) or the income requirements in 1902(e)(14), and Idaho would be bound by such change under section 56-267. For reasons discussed below, Regan's arguments are without merit.

"A party arguing that a statute is unconstitutional has the 'burden of showing its invalidity and must overcome a strong presumption of validity.'" *State v. Prather*, 135 Idaho 770, 772, 25 P.3d 83, 85 (2001) (quoting *Olsen v. J.A. Freeman Co.*, 117 Idaho 706, 709, 791 P.2d 1285, 1288 (1990)). "In reviewing the constitutionality of a statute, Idaho appellate courts are obligated to 'seek an interpretation of a statute that upholds its constitutionality.'" *Id.* (quoting *State v. Cobb*, 132 Idaho 195, 197, 969 P.2d 244, 246 (1998)). "When the court finds that a statute is capable of two interpretations, one which would make it constitutional and the other unconstitutional, the court should adopt that construction which upholds the validity of the act." *Id.* (citing *Cowles Pub. Co. v. Magistrate Court*, 118 Idaho 753, 759, 800 P.2d 640, 646 (1990)).

Article 3, section 1 of the Idaho Constitution provides that, "[t]he legislative power of the state shall be vested in a senate and house of representatives." Idaho Const. art. III, § 1. "[I]t is well established that the legislature cannot delegate any of its power to make laws to any other body or authority[.]" *Kerner v. Johnson*, 99 Idaho 433, 450, 583 P.2d 360, 377 (1978). The Idaho Constitution also provides that "[t]he people reserve to themselves the power to propose laws, and enact the same at the polls independent of the legislature." Idaho Const. art. III, § 1. Thus, voter "[i]nitiatives and laws passed by the legislature are on equal footing" and "once a law is enacted in the initiative process it is like any other law." *Gibbons*, 140 Idaho at 320, 92 P.3d at 1067.

8

This Court has previously addressed the situation present here; that is, the effect of a statute referencing or incorporating another statute. In *Nampa & Meridian Irrigation District v. Barker*,[1] an irrigation district had a duty to collect a penalty for non-payment of its assessments; however, the district was not sure what the proper measure of the penalty was. 38 Idaho 529, 223 P. 529 (1924). The issue was whether the penalty was 10% or 6% of the delinquent taxes. *Id.* at 531, 223 P. at 530. When the statute governing the irrigation penalty was enacted by the legislature, delinquent state and county taxes were subject to a rate of 10%. *Id.* Later, the general law was changed to where delinquent state and county taxes were subject to a rate of 6%. *Id.* Thus, the issue was whether the irrigation penalty statute intended to adopt the rate in place at the time the irrigation statute was adopted (10%), or whether the irrigation penalty statute intended to adopt the general law governing the rate for delinquent state and county taxes as it may exist from time to time, and which had changed to 6%. *Id.*

This Court explained there are two alternative approaches when a statute adopts or references another statute. First, this Court stated:

> Where one statute adopts the particular provisions of another by a specific and descriptive reference to the statute or provisions adopted, the effect is the same as though the statute or provisions adopted had been incorporated bodily into the adopting statute. When so adopted, only such portion is in force as relates to the particular subject of the adopting act, and as is applicable and appropriate thereto. Such adoption takes the statute as it exists at the time of adoption and does not include subsequent additions or modifications of the statute so taken unless it does so by express intent.

*Id.* at 533, 223 P. at 530 (citations and quotation marks omitted). Alternatively, this Court stated there is "another form of adoption" where a reference in a statute is "not to any particular statute or part of a statute," but rather "the law generally which governs a particular subject." *Id.* "The reference in such case means the law as it exists from time to time or at the time the exigency arises to which the law is to be applied." *Id.* The Court held that the irrigation penalty statute fell within the second class mentioned as it did "not refer to any specific act or section" but rather to "the law generally governing the penalties for delinquent state and county taxes." *Id.* at 533–34, 223 P. at 531. Thus, this Court held the delinquent irrigation penalty was subject to the 6% rate as was in place at the time, rather than the previous 10% rate. *Id.* at 534, 229 P. at 531.

---

[1] Though Regan contended at oral argument that he was ambushed when Denney filed supplemental authority that included *Barker* and *Brannon*, the supplemental authority was validly filed pursuant to Idaho Appellate Rule 34(f)(1) and Regan received notice of the filing.

Similarly, this Court in *Brannon v. City of Coeur d'Alene* dealt with a situation where a statute referenced a second statute that was later repealed. 153 Idaho 843, 292 P.3d 234 (2012). There, an unsuccessful candidate for city council contested the election after he lost by five votes. *Id.* at 845, 292 P.3d at 236. One of the issues on appeal was the district court's ruling that five votes were legally cast under the Uniformed and Overseas Citizens Absent Voting Act (UOCAVA). *Id.* at 848, 292 P.3d at 239. The Idaho statute governing municipal elections for members of the armed forces referenced the Federal Voting Assistance Act (FVAA) of 1955. *Id.* at 849, 292 P.3d at 240. Later, the UOCAVA repealed and replaced the FVAA in terms of absentee voting, and thus the issue before the Court was whether the FVAA or UOCAVA applied to municipal elections in Idaho. *Id.* In holding the FVAA, and not UOCAVA applied, the Court said the "FVAA 1955 provisions pertaining to persons in the United States service continued in force. The 1986 repeal of FVAA had no impact on the operation of FVAA's absentee voting provisions in the context of" the Idaho voting statute. *Id.* at 850, 292 P.3d at 241. In so holding, this Court quoted *Barker*: "[s]uch adoption takes the statute as it exists at the time of adoption and does not include subsequent additions or modifications of the statute so taken unless it does so by express intent." *Id.* at 849, 292 P.3d at 240 (quoting *Barker*, 38 Idaho at 533, 223 P. at 530). The Court also quoted the Fourth Circuit Court of Appeals:

> Where a reference statute incorporates the terms of one statute into the provisions of another act, the two statutes coexist as separate distinct legislative enactments, each having its appointed sphere of action. . . . Accordingly, [a]s neither statute depends upon the other's enactment for its existence, the repeal of the provision in one enactment does not affect its operation in the other statute.

*Id.* at 850, 292 P.3d at 241 (quoting *United States v. Myers*, 553 F.3d 328, 331 (4th Cir. 2009)).

In this case, section 56-267 specifically references the Social Security Act and two provisions within that act. It is unlike the statute in *Barker* that did not reference any specific act or section, and rather only generally referenced law governing penalties for delinquent state and county taxes. Therefore, because of section 56-267's specific reference, "[s]uch adoption takes the statute as it exists at the time of adoption and does not include subsequent additions or modifications of the statute so taken unless it does so by express intent." *Barker*, 38 Idaho at 533, 223 P. 530. Similarly, applying *Brannon* here further demonstrates section 56-267 has not delegated any lawmaking authority to the federal government. The Court in *Brannon* affirmed the idea that when a statute references a second statute, it adopts that statute as it is in its current form. Subsequent amendment or repeal does not affect the initial statute.

10

Despite *Barker* and *Brannon*, Regan relies heavily on *Idaho Savings & Loan Association v. Roden*, 82 Idaho 128, 134, 350 P.2d 225, 228 (1960) to support his position. In *Roden*, this Court held that certain provisions within Title 30, chapter 13 of the Idaho Code were unconstitutional. *Id.* at 135, 350 P.2d at 229. In that case, a statute required that "Idaho savings and loan associations insure their accounts with the Federal Savings and Loan Insurance Corporation as a condition precedent to doing business in the State of Idaho, or to the continuation of doing business in the State of Idaho." *Id.* at 133, 350 P.2d at 227–28. Four sections of the statute were determined to be unconstitutional because they delegated authority to an agency of the U.S. Government. *Id.* at 134, 350 P.2d at 228. This Court stated that the sections at issue

> required [Idaho savings and loan associations] to abide by and conform with rules and regulations of the Federal Home Loan Bank Board adopted after enactment of the Idaho legislation, and to abide by and conform with any amendment to Title 4 of the Housing Act relating to insurance of accounts which may become effective after the date of the Idaho act.

*Id.* One section at issue, section 30-1301A, stated in pertinent part that every corporation formed under Chapter 13, Title 30 Idaho Code "must have at all times a minimum capital represented by . . . or paid in cash sufficient to qualify such corporation for insurance of accounts by the Federal Savings and Loan Insurance Corporation, as provided by Title IV of the National Housing act, *as may be amended from time to time*." H.B. 196, S.L. 1957, ch. 239, § 3 (emphasis added). Another section, 30-1301H, required that a corporation file "evidence that the corporation has complied with or meets all of the qualifications for compliance with the requirements of the Federal Savings and Loan Insurance Corporation Act and the Home Loan Bank Board for insurance of accounts[.]" H.B. 196, S.L. 1957, ch. 239, § 3.

This Court stated "the question to be resolved is whether or not the Legislature of the State of Idaho, contrary to the Idaho Constitution, Article 3, section 1, unlawfully delegated its authority to the federal government and an agency thereof." *Roden*, 82 Idaho at 134, 350 P.2d at 228. This Court did not undertake a lengthy review of the trial court's determination that the sections were unconstitutional because the plaintiff agreed the sections were unconstitutional and was challenging only whether the delegation was severable. *Id.* Thus, this Court focused primarily on whether the unconstitutional provisions were severable, stating "[i]n dealing with the problem as to whether the unconstitutional provisions are severable, we must look to the

11

effect upon the legislation of the deletion of these provisions." *Id.* at 135, 350 P.2d at 229. As we stated,

> [u]nder the decision of the trial court, the plaintiff is not required to observe future rules and regulations of the Board nor future amendments of the National Housing Act. But an agreement to observe and be bound by future amendments to the National Housing Act and future rules and regulations of the Board is exacted as a condition to granting the insurance, and also to continuing it in force. Hence, appellant can neither obtain the insurance nor continue it in force without being compelled to abide by the unconstitutional provisions of the Idaho act. Thus, it is demonstrated that the unconstitutional provisions delegating to the Congress and the Home Loan Bank Board the legislative power and function to make future laws and regulations governing appellant's business and its right to remain in business, are not severable from the provisions requiring appellant to obtain insurance of accounts by the Federal Savings and Loan Insurance Corporation. The provisions requiring such insurance are therefore unconstitutional and void.

*Id.*

In this case, contrary to Regan's assertion, a comparison cannot be drawn from *Roden*, as section 56-267 is distinguishable from the statute at issue in *Roden*. In *Roden*, the unconstitutional statute required Idaho savings and loan associations to conform to the rules and regulations of the Federal Home Loan Bank Board. *Id.* at 134, 350 P.2d at 228. And, one of the offending sections expressly authorized *future* unknown amendments with which Idaho savings and loan associations would have to comply. H.B. 196, S.L. 1957, ch. 239, § 3 (emphasis added). As this Court stated, the sections required savings and loan associations to "abide by and conform with any amendment to Title 4 of the Housing Act relating to insurance of accounts which may become effective after the date of the Idaho act." *Roden*, 82 Idaho at 134, 350 P.2d at 228. There is no such provision in section 56-267. While section 56-267 states that it is "in accordance with" two sections of the Social Security Act, section 56-267 delineates with specificity who is covered by the Medicaid expansion. Section 56-267 does not state that compliance is required with future amendments to the federal statute like the statute did in *Roden*. Because of section 56-267's explicit reference to a specific provision of the Social Security Act, "[s]uch adoption takes the statute as it exists at the time of adoption and does not include subsequent additions or modifications of the statute so taken" as there is no "express intent" indicating it had to do so. *Barker*, 38 Idaho at 533, 223 P. 530.

Regan argues that because section 56-267 is "in accordance with" Sections 1902(a)(10)(A)(i)(VII) and 1902(e)(14) of the Social Security Act, the federal government could

change the income requirements or increase the poverty line from 133% to 153% and Idaho would have to cover the additional people who would be eligible for Medicaid. This argument is without merit. As discussed in *Barker* and *Brannon*, section 56-267's specific reference to the federal statute indicates section 56-267 is adopting the federal statute as it exists at the time section 56-267 was executed as there is no express intent to the contrary. *Barker*, 38 Idaho at 533, 223 P. 530; *Brannon*, 153 Idaho at 850, 292 P.3d at 241. This is unlike *Roden* where the statute contemplated future amendments to the federal statute "from time to time." There is no such contemplation in section 56-267. Moreover, section 56-267 specifically delineates who is eligible for Medicaid under the expansion. It defines the eligible population as "persons under sixty-five (65) years of age whose modified adjusted gross income is one hundred thirty-three percent (133%) of the federal poverty level or below and who are not otherwise eligible for any other coverage under the state plan, in accordance with sections 1902(a)(10)(A)(i)(VIII) and 1902(e)(14) of the Social Security Act." If, as Regan contends, the federal government were to amend section 1902(a)(10)(A)(i)(VIII) to cover those up to 153% of the poverty level, it would not mean that Idaho automatically has to cover additional Idaho citizens. Rather, because Medicaid is a cooperative federal-state program, if Idaho wanted to continue offering expanded Medicaid services, the Idaho legislature would have to decide to pass new legislation conforming with the amendment. *See Stafford v. Idaho Dep't of Health & Welfare*, 145 Idaho 530, 534, 181 P.3d 456, 460 (2008); *see also Attorney General Opinion 89-3*, Jim Jones (Feb. 8, 1989).

Moreover, to the extent the holding of *Roden* could have suggested it was an unconstitutional delegation of lawmaking authority when a statute references federal law, that holding was called into doubt in *State v. Kellogg*, 98 Idaho 541, 543, 568 P.2d 514, 515 (1977). There, the statute governing who could sell prescription drugs did "not specify which drugs shall require a prescription order, but instead conditions that status upon three possible alternatives: (1) another state law, (2) a law of the United States, or (3) a rule or regulation of the Idaho Board of Pharmacy." *Id.* at 542, 568 P.2d at 515. Because there was no other state law defining prescription drugs, and because the Board of Pharmacy deferred to federal law to define which drugs require a prescription, this Court stated "the only method by which a drug may become a prescription drug in Idaho is by the operation of federal law" *Id.* at 543, 568 P.2d at 516.

The lower court held the statute was an unconstitutional delegation of legislative authority. *Id.* at 542, 568 P.2d at 515. This Court reversed the lower court's holding stating,

"[a]lthough the legislature cannot delegate its power to make a law or complete one, it can empower an agency or an official to ascertain the existence of the facts or conditions mentioned in the act upon which the law becomes operative." *Id.* at 543, 568 P.2d at 516 (citation omitted). In noting that the area of drug regulation demanded particular practical considerations, this Court said, "[i]n deciding whether a delegation is proper the court's evaluation must be 'tempered by due consideration for the practical context of the problem sought to be remedied, or the policy sought to be effected.'" *Id.* (quoting *Dept. of Citrus v. Griffin*, 239 So.2d 577 (Fla. 1970)).

It should be noted that section 56-267 is not the first nor is it the only statute to reference federal law. In fact, many Idaho statutes reference federal law. For example, Idaho Code section 33-2202 provides that:

> The state board of education is hereby designated as the state board for career technical education for the purpose of *carrying into effect the provisions of the federal act* known as the Smith-Hughes act, *amendments thereto*, and any subsequent acts now *or in the future* enacted by the congress affecting vocational education, . . . .

(emphases added); *see also* Idaho Code section 33-2902 ("the assent of the legislature of the state of Idaho is hereby given to [the Hatch act] . . . and the acts amendatory thereof and supplementary thereto."); Idaho Code section 74-104(1) ("The following records are exempt from disclosure: . . . any public record exempt from disclosure by federal or state law or federal regulations . . . ."). In fact, Idaho's existing Medicaid statute, even prior to expansion, incorporates federal law to determine eligibility. *See* I.C. § 56-254 (referencing the federal poverty guideline and various sections of the Social Security Act to determine Medicaid eligibility). Regan has not challenged the existing statute even though the existing Medicaid statute references various sections of the Social Security Act to determine eligibility. It is unclear why Regan contends the Medicaid expansion statute is unconstitutional but does not challenge the existing Medicaid statute, when both reference the Social Security Act. If we were to accept Regan's argument that any reference to a federal statute delegates lawmaking authority to the federal government, then many of Idaho's statutes would be unconstitutional, and in fact, the option of any cooperative federal-state program would be curtailed.

Regan also argues that section 56-267 gives the Department "uncontrolled, unrestricted and unguided discretionary power that exceeds constitutional limits." However, section 56-267 does not leave the Medicaid eligibility determination to the Department; rather, the statute states the three criteria that must be present in order for an individual to qualify for Medicaid after the

expansion. I.C. § 56-267. This delegation is consistent with that approved of in *Kellogg*. Moreover, this delegation is consistent with the statutory duty granted to the Director of the Department which states in part that the Director shall "[p]romulgate, adopt and enforce such rules and such methods of administration as may be necessary or proper to carry out the provisions of title 56, Idaho Code . . . ." I.C. § 56-202. Thus, Regan's argument that the statute delegates uncontrolled power to the Department is unpersuasive.

Regan next argues that the federal government currently pays 90% of the costs associated with the expansion of Idaho Medicaid, but that the federal government could lower the amount of the federal contribution in the future. Regan provides almost no citation or authority for this argument, and instead focuses on the "sunset clause" that was in an earlier draft of section 56-267 but removed prior to its passage. The "sunset clause" would have caused the expansion to become void if federal funding were to fall below 90%. The sunset clause is not present in section 56-267, so Regan is essentially arguing its absence delegates lawmaking authority to the federal government. Thus, Regan contends, "[t]he federal government can exercise its lawmaking power and change this 90% to 71% without Idaho ever exercising any of its lawmaking power found in Article III of the Idaho Constitution." This argument is without merit.

Idaho's ongoing participation in Medicaid, even prior to expansion, requires a yearly appropriation of funds from the legislature. As provided in Article VII, Section 13 of the Idaho Constitution, "[n]o money shall be drawn from the treasury, but in pursuance of appropriations made by law." Each year, the legislature appropriates funding for Medicaid, which is passed by the House and Senate, and signed by the Governor. *See* H.B. 695 (2018); S.B. 1376 (2018). Thus, the Idaho legislature will control the ongoing nature of Medicaid through its annual appropriation of funds. Additionally, as the United States Supreme Court has said, "[t]hough Congress' power to legislate under the spending power is broad, it does not include surprising participating States with post-acceptance or 'retroactive' conditions." *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 584 (2012) (citation omitted). The Court noted Congress cannot penalize states that choose not to expand Medicaid by taking away the state's existing Medicaid funding. *Id.* at 585. Thus, should the federal government ever lower its contribution for expanded coverage, the federal government could not take away Idaho's existing Medicaid funding, should Idaho return to its coverage system prior to expansion. Accordingly, Regan's contention that the federal government can control Idaho's expenditure of funds is unpersuasive.

15

Lastly, Regan contends that if section 56-267 had stated "in accordance with sections 1902(a)(10)(A)(i)(VIII) and 1902(e)(14) of the Social Security Act *as currently codified*" then it would be constitutional because the legislature could annually revisit and adopt it. However, section 56-267 did not need to state "as currently codified" to be constitutional. By its specific reference to the Social Security Act and sections therein, section 56-267 adopted the federal statute as it is currently codified. *See Barker*, 38 Idaho at 533, 223 P. 530; *Brannon*, 153 Idaho at 850, 292 P.3d at 241. Additionally, as discussed, Idaho's Medicaid program only continues to operate each year if the legislature appropriates the necessary funding for the program. Idaho Const. art. VII, § 13. Thus, the legislature *does* revisit the Medicaid statute annually and appropriates funds as it deems appropriate. Regan's argument that the statute needed to say "as currently codified" in order to be constitutional is without merit.

In sum, once a ballot initiative is passed and is law, it is treated the same as if the legislature had passed it. *Gibbons*, 140 Idaho at 320, 92 P.3d at 1067. Because Regan is arguing the statute is unconstitutional, he "has the 'burden of showing its invalidity and must overcome a strong presumption of validity.'" *Prather*, 135 Idaho at 772, 25 P.3d at 85 (quoting *Olsen*, 117 Idaho at 709, 791 P.2d at 1288). And, "an appellate court is obligated to seek an interpretation of a statute that upholds its constitutionality." *Id.* (quoting *Cobb*, 132 Idaho at 197, 969 P.2d at 246). Here, section 56-267 is constitutional and it does not delegate lawmaking authority to the federal government. Regan's petition is dismissed and his request for a writ of mandamus is denied.

## C. We do not award attorney fees on appeal.

Based on the above, Regan is not the prevailing party. The Intervenors do not request attorney fees. Denney requests attorney fees pursuant to Idaho Code section 12-121 and contends Regan's petition was frivolous, unreasonable, or without foundation. We decline to award attorney fees on appeal.

Pursuant to section 12-121, this Court, in any civil action, may award reasonable attorney fees to the prevailing party. I.C. § 12-121; *Doe v. Doe (2016-7)*, 161 Idaho 67, 79, 383 P.3d 1237, 1249 (2016). "This Court has held that attorney fees can be awarded on appeal under Idaho Code section 12-121 'only if the appeal was brought or defended frivolously, unreasonably, or without foundation.'" *Doe (2016-7)*, 161 Idaho at 79, 383 P.3d at 1249 (citation omitted).

16

However, "[f]ees will generally not be awarded for arguments that are based on a good faith legal argument." *Easterling v. Kendall*, 159 Idaho 902, 918, 367 P.3d 1214, 1230 (2016).

In this case, though we have determined section 34-1809(4) to be unconstitutional, we note that Regan was not unreasonable in relying on such provision in bringing his petition before this Court. Because Regan relied on section 34-1809(4) to seek review from this Court, we decline to award attorney fees on appeal pursuant to section 12-121.

## IV. CONCLUSION

Section 56-267 is constitutional. Regan's petition is dismissed and his request for a writ of mandamus denied. No attorney fees are awarded on appeal. Costs as a matter of right to Intervenors and Denney.

Justice BEVAN CONCURS.

STEGNER, J., concurring.

I concur in Chief Justice Burdick's decision in its entirety. I write separately to address the concerns raised by the dissents authored by my colleagues Justice Brody and Justice Moeller.

Justice Brody would take "an early off-ramp" from deciding whether Idaho Code section 56-267 is constitutional because she questions this Court's jurisdiction. She writes, "Today, the Court takes on that issue in a case that has not been tested and sharpened through the adversarial system in the district court. Our Constitution purposefully limits this Court's original jurisdiction, recognizing that this institution speaks most clearly when issues and records are fully developed and all of the necessary parties have been named and joined." Her solution would be to dismiss this case on jurisdictional grounds so that Regan can bring his action in district court where it can then wend its way back to us in what, by my estimation, would take years.

In *Nez Perce Tribe v. Cenarrusa*, 125 Idaho 37, 867 P.2d 911 (1993) we wrote:

> Article 5 § 9 of the Idaho Constitution grants this Court "original jurisdiction to issue writs of mandamus, certiorari, prohibition and habeas corpus, and all writs necessary or proper to the complete exercise of its appellate jurisdiction." We will accept jurisdiction to review a petition for extraordinary relief where the petition alleges sufficient facts concerning possible constitutional violations. *See Sweeney v. Otter*, 119 Idaho 135, 138, 804 P.2d 308, 311 (1990). Furthermore, in certain circumstances this Court will exercise its original jurisdiction to rule on the constitutionality of a statute. *See Mead v. Arnell*, 117 Idaho 660, 791 P.2d 410 (1990); *see also Evans v. Andrus*, 124 Idaho 6, 855 P.2d 467 (1993).

17

125 Idaho at 38, 867 P.2d at 912. In that case, the Nez Perce Tribe sought a writ of mandamus "directly from the Secretary of State to respond to the petition and to invalidate the results of the November 3, 1992 election." *Id.* The Court went further:

> Although we question the propriety of a writ of mandamus directed at the Secretary of State to invalidate a constitutional amendment, we, nevertheless, exercise our original jurisdiction because the amended petition of the Nez Perce alleges sufficient facts concerning possible constitutional violations. *See Sweeney v. Otter*, 119 Idaho at 138, 804 P.2d at 311.

*Nez Perce Tribe*, 125 Idaho at 39, 867 P.2d at 913.

I am unable to distinguish the facts in this case from *Nez Perce Tribe*. I also think it noteworthy that in *Nez Perce Tribe*, the relief sought, a writ of mandamus, and the office-holder against whom the writ was sought, the Secretary of State, are the same as in this case. We found jurisdiction to address the merits in *Nez Perce Tribe*. We do so here for the same reasons.

Justice Moeller writes: "[s]imply put, I do not believe that Regan's petition presents an urgent constitutional issue sufficient to overcome its jurisdictional deficiencies[.]" As near as I can tell, there are tens of thousands of Idahoans who fall within the Medicaid "gap"—those who make too much to qualify for Medicaid benefits, but do not make enough to be eligible to take advantage of subsidized health insurance. This gap population finds itself without access to health care.

In *Sweeney v. Otter*, 119 Idaho 135, 138, 804 P.2d 308, 311 (1990), the question presented was: "Does the Lieutenant Governor violate the separation of powers clause of the Idaho Constitution by voting during the Senate's organization session when the vote is equally divided?" To my mind, whether tens of thousands of Idahoans should have access to health care is a much more urgent question than who should chair the germane committees in the Idaho Senate.

Justice Moeller's dissent also fails to consider the fast-approaching 90-day window for the Department to submit any necessary plan amendments. This Court has previously held that review was urgent due to a deadline imposed on the Secretary of State. *Van Valkenburgh v. Citizens for Term Limits*, 135 Idaho 121, 124, 15 P.3d 1129, 1132 (2000). In addition, the proposition that the 90-day window is enough to satisfy the urgent requirement is further supported by the fact that *Van Valkenburgh* was still considered urgent despite the deadline having passed before this Court's decision. *Id.* (The deadline was April 10, 2000 and this Court's decision was issued December 6, 2000.)

Justice Moeller also describes this as a political question that would best be avoided. I return to *Sweeney* and ask the rhetorical question: how is the determination of who will chair the Idaho Senate's germane committees anything other than a political question? I think the issue presented in this case is much less a political question than that presented in *Sweeney*.

In sum, rather than taking the quick off-ramp and letting this case languish through the trial court, only to work its way back to this Court, I opt to address the question head-on. The constitutionality of Idaho Code section 56-267 is not a difficult question. We deal with much more challenging and closer questions on a daily basis. The statute is constitutional. Rather than make this pronouncement at some point in the distant future, we have the jurisdiction and the "urgent need" to make it today. The electorate and the other branches of government need and deserve an answer. We have given them one.

BRODY, J., concurring in part and dissenting in part.

The Court acknowledges in the opening of its analysis that there are notable procedural deficiencies with Regan's petition. For me, the procedural deficiencies are insurmountable hurdles that we should not overlook. To be clear, I have concluded that Regan's petition should be dismissed and no relief should be granted by the Court. The Court's decision today, however, goes beyond a dismissal, and instead declares section 56-267 constitutional and denies a writ of mandamus. While I understand the pragmatic pull to end the constitutional debate so lawmakers know the decisions that need to be made, judicial restraint remains imperative.

The issue of how this Court interprets legislation incorporating federal law is complex and has far reaching implications. Today the Court takes on that complex issue in a case where the Idaho Department of Health and Welfare—the state agency charged with implementing that legislation—has not had an opportunity to be heard because it is not a party. Today, the Court takes on that issue in a case that has not been tested and sharpened through the adversarial system in the district court. Our Constitution purposefully limits this Court's original jurisdiction, recognizing that this institution speaks most clearly when issues and records are fully developed and all of the necessary parties have been named and joined. The Court's limited original jurisdiction does not include the authority to issue declaratory judgments which are not necessary to decide the question of whether an extraordinary writ should issue.

To unpack my view of this case it is necessary to start with what Regan is asking this Court to do in his prayer for relief. Regan's prayer is plain and simple, as it should be:

19

(1) A declaration from this Court that Proposition #2 is unconstitutional and unenforceable;

(2) This Court should further order that Chapter 2, Title 56, Idaho Code, should not be revised by the Idaho Secretary of State to include the amending language of Proposition #2 as the law of this state, nor should Proposition #2 be in any way enforced or enforceable; or

(3) Alternatively, if the Secretary of State has already revised Chapter 2, Title 56, Idaho Code, to include the amending language of Proposition #2 by the time this Court determines that Proposition #2 is unconstitutional, this Court should order the Secretary of State to again revise Chapter 2, Title 56, Idaho Code, to remove the amending language of Proposition #2.

Regan thought the key to obtaining his requested relief was Idaho Code section 34-1809(4). His petition states: "The Court has original jurisdiction to consider this Petition under Idaho Code section 34-1809(4)." I agree with the Court that Regan's analysis of original jurisdiction was incorrect. I agree with the Court that this provision is unconstitutional. The Idaho Constitution sets forth this Court's original jurisdiction and limits it to issuing "writs of mandamus, certiorari, prohibition, and habeas corpus, and all writs necessary or proper to the complete exercise of its appellate jurisdiction." Idaho Const. art. V, § 9. The legislature cannot expand our jurisdiction.

When initially reviewing Regan's petition, the Court—based on traditional notions of fair play and due process—did as it always does when construing pleadings; it liberally construed Regan's prayer for relief and concluded that it could be fairly read as setting forth a request for the issuance of a writ of mandate or prohibition. The Court directed Regan to file a brief in support of his position in accordance with Rule 5 of the Appellate Rules of Procedure which governs actions for extraordinary writs.

Regan complied with the Court's order. Regan made it clear in his opening brief that his petition should not be construed as a request for a writ and that he was seeking declaratory relief under section 34-1809(4). He wrote:

Accordingly, Petitioner requests that the Court follows Section 34-1809(4) and have the entire Court determine the constitutionality of Idaho Code Section 56-267 rather than follow the procedure in Idaho Appellate Rule 5(d).

For me, Regan's position eliminated any concern I had about how to read his petition, and I would simply dismiss his petition for lack of jurisdiction based on the Court's determination that section 34-1809(4) is unconstitutional. There is no need to address whether a writ of mandamus

or prohibition should issue, and certainly no need to address the constitutionality of section 56-267.

While I would choose to take an early off-ramp to dismiss Regan's petition, the Court continues on with the matter by next addressing the merits of Regan's claim that section 56-267 is unconstitutional. Absent from the Court's opinion is a discussion of the legal basis upon which an extraordinary writ may issue. Whether an extraordinary writ should issue is the only question the Court has the authority to address given our constitutional limitation on original jurisdiction. Taking up the writ issue first— before considering the constitutionality of section 56-267—is also consistent with the Court's long-standing jurisprudence that it does not rule on constitutional challenges unless it is necessary for a determination of the case. *See e.g., State v. Doe*, 140 Idaho 271, 273, 92 P.3d 521, 523 (2004); *Poesy v. Bunney,* 98 Idaho 258, 264, 561 P.2d 400, 406 (1977); *Swensen v. Buildings, Inc.,* 93 Idaho 466, 469, 463 P.2d 932, 935 (1970); *Twin Falls Canal Co. v. Huff*, 58 Idaho 587, 599, 76 P.2d 923, 928 (1938).

There is no legal basis upon which to issue a writ of mandamus. Idaho Code section 7-302 provides that a "writ of mandamus 'may be issued by the Supreme Court . . . to any . . . person, to compel the performance of an act which the law especially enjoins as a *duty* resulting from an office, trust or station.'" *Coeur D'Alene Tribe v. Denney*, 161 Idaho 508, 512, 387 P.3d 761, 765 (2015) (emphasis added) (quoting I.C. § 7-302). The Court has said,

> [M]andamus will lie if the officer against whom the writ is brought has a "*clear legal duty*" to perform the desired act, and if the act sought to be compelled is ministerial or executive in nature. If the act sought to be compelled of the public officer is ministerial, the Court must find the party seeking the writ has a clear legal right to have the act performed.

*Id.* (emphasis added) (quoting *Utah Power & Light Co. v. Campbell*, 108 Idaho 950, 953, 703 P.2d 714, 717 (1985)).

In this case, a writ of mandamus could not be issued because Denney does not have a "clear legal duty" to remove an unconstitutional statute from the Idaho Code. In *Coeur D'Alene Tribe*, this Court determined Denney had a clear legal duty, pursuant to section 67-505, to certify a bill as law when the Governor did not timely veto a bill. 161 Idaho at 521, 387 P.3d at 774 ("There is nothing discretionary about the Secretary of State's role in the matter: once the deadline has passed for the Governor's return of a veto, the Secretary of State has a non-discretionary duty to certify the bill as law."). Here, however, Regan is not seeking to compel

21

Denney to perform a non-discretionary ministerial duty, as there is no authority mandating that Denney remove certain provisions from the Idaho Code.

Regan cites to Idaho Code section 73-205 titled "Powers and duties of commission" and contends this statute confers a duty on Denney to remove statutes this Court determines are unconstitutional. However, nothing in section 73-205 so requires. Instead, section 73-205 authorizes the Idaho Code Commission, the body responsible for ensuring that the Idaho Code is updated after each legislative session, to enter into contracts with publishers. Nothing in section 73-205 authorizes or confers any duty on Denney to repeal sections of the Idaho Code that the Court deems unconstitutional. Rather, a statute declared unconstitutional by the Court stays in the Code, but with an annotation to the case holding that the statute is unconstitutional. Thus, Regan's attempt to get an order from the Court directing Denney to revise the Idaho Code fails. Put simply, there is no authority for Denney to do so.

The constitutionality of section 56-267 and whether a writ of mandamus should issue are completely separate issues. The Court cites *Coeur D'Alene Tribe v. Denney*, 161 Idaho at 514, 387 P.3d at 767, and *Keenan v. Price*, 68 Idaho 423, 429, 195 P.2d 662, 664 (1948), as the basis for exercising jurisdiction in this case. The constitutional issues presented in both of those cases were inextricably intertwined with the question of whether a writ of mandate should issue. In *Coeur D'Alene Tribe*, the Tribe petitioned the Court for a writ of mandamus compelling the Secretary of State to certify as law a bill repealing historical horse racing. 161 Idaho at 511, 387 P.3d at 764. The Tribe argued that the Secretary of State had a non-discretionary duty to certify the bill as law because Governor Otter's veto of the bill was untimely under the Idaho Constitution. *Id.* at 512, 387 P.3d at 765. The Court, after a lengthy analysis of the constitutional provisions at issue, concluded that Governor Otter's veto was untimely and issued the writ mandating that the Secretary of State certify the bill. *Id.* at 526, 387 P.3d at 779. The Court *had* to answer the constitutional question before it could determine whether to issue a writ.

Similarly, in *Keenan*, the petitioner sought a writ of mandate to compel the Secretary of State to accept and file his petition for candidacy and certify his name to the county auditors as a candidate for governor for the upcoming election. 68 Idaho at 428–29, 195 P.2d at 664. The Secretary of State had refused to do so based on a recent constitutional amendment which required, among other things, that a governor not succeed himself except after sitting out a full term. *Id.* In deciding whether a writ could properly issue, the Court examined the

22

constitutionality of the amendment because it was inextricably intertwined with the issue of whether the Secretary of State had a duty to certify Keenan's name. *Id.* at 432, 195 P.2d at 666.

In this case, the constitutionality of section 56-267 is not inextricably intertwined with whether a writ of mandate should issue. The Court does not have the jurisdiction to issue a declaratory judgment in this context and Regan's petition should be denied without further comment by the Court.

MOELLER, J.   Specially concurring in part and dissenting in part.

I write briefly to note my concurrence with the majority in its decision that Idaho Code section 34-1809(4) is unconstitutional because it improperly attempts to confer original jurisdiction in this Court. I also concur on the majority's ruling on attorney fees. However, I join with Justice Brody in dissenting from the portion of the decision wherein the majority elects to exercise this Court's original jurisdiction pursuant to Article V, section 9 of the Idaho Constitution and rule upon the merits of the case. Although I fully concur with Justice Brody's analysis, I write separately to point out my additional concerns on the issues of jurisdiction and justiciability.

## I.   JURISDICTION

Simply put, I do not believe that Regan's petition presents an urgent constitutional issue sufficient to overcome its jurisdictional deficiencies—many of which are noted in the majority's decision. In *Sweeney v. Otter*, 119 Idaho 135, 804 P.2d 308 (1990), this Court decided a case without clear jurisdiction to do so. However, it ruled upon the merits "[b]ecause the petition allege[d] sufficient facts concerning a possible *constitutional violation of an urgent nature* . . . ." *Id.* at 138, 804 P.2d at 311 (emphasis added). In that case, the Supreme Court was confronted with an actual and urgent constitutional crisis. The Idaho senate was deadlocked at 21 Democrats and 21 Republicans following the 1990 general election. Before taking office, leadership elections were held. When the vote for president pro tempore of the senate ended in a tie, it was broken by the newly elected lieutenant governor. An issue arose as to whether the Idaho Constitution prohibited the lieutenant governor from voting on organizational matters of the senate. This was the first time in Idaho's history that the senate had been equally divided

between two political parties. Thus, the *Sweeney* court was confronted with a unique and urgent constitutional issue of first impression that would paralyze the legislature until it was resolved.[2]

This case is distinguishable from *Sweeney*. Notwithstanding the majority's belief that there is an urgency to this matter based on the nature of the constitutional challenge, any urgency or uncertainty in this case is mainly the result of Regan's own actions in filing his petition. For example, the majority correctly recognizes that other provisions of Idaho's Medicaid law contain references to federal law similar to the portions of Idaho Code section 56-267 that are contested in this case; yet Regan has not challenged these provisions. *See, e.g.*, I.C. § 56-254. There are comparable provisions in other Idaho statutes that reference a federal law that have existed on the books for years. The constitutionality of such statutory language has previously been challenged in the district courts of the state without the necessity of the Supreme Court invoking its original jurisdiction. *See, e.g.*, *Idaho Sav. & Loan Ass'n v. Roden*, 82 Idaho 128, 350 P.2d 225 (1960); *State v. Kellogg*, 98 Idaho 541, 568 P.2d 514 (1977). There is simply no urgent constitutional crisis here—as there was in *Sweeney*—except one of Regan's own making. In other words, I believe that if this matter were properly dismissed, the legislature would be free to immediately act on section 56-267 and address the concerns it was intended to resolve. Under these circumstances, principles of judicial restraint compel me to dissent from the majority's decision to take up the merits of this case.

## II. JUSTICIABILITY

In addition, Regan's petition suffers from serious justiciability defects. The law in Idaho is clear that "[a] prerequisite to a declaratory judgment action is an actual or justiciable controversy. Justiciability is generally divided into subcategories—advisory opinions, feigned and collusive cases, standing, ripeness, mootness, political questions, and administrative questions." *Miles v. Idaho Power Co.*, 116 Idaho 635, 639, 778 P.2d 757, 761 (1989) (internal citation omitted). This case presents a variety of troublesome justiciability questions, the most serious of which appears to be the political question doctrine.

---

[2] Interestingly, just three years later, the Court appeared to lower the *Sweeney* standard by ignoring the urgency requirement: "We will accept jurisdiction to review a petition for extraordinary relief where the petition alleges sufficient facts concerning *possible constitutional violations*." *Nez Perce Tribe v. Cenarrusa*, 125 Idaho 37, 38, 867 P.2d 911, 912 (1993) (emphasis added). However, in more recent years the urgency requirement was apparently resuscitated. *See, e.g.*, *Coeur D'Alene Tribe v. Denney*, 161 Idaho 508, 513, 387 P.3d 761, 766 (2015); *Idaho Watersheds Project v. State Bd. of Land Commissioners*, 133 Idaho 55, 57, 982 P.2d 358, 360 (1999).

What this case actually presents to the Court is not an urgent constitutional issue, but a political question. This became readily apparent at oral argument, when counsel for Regan, in urging the Court to strike down the new law, argued that what the Supreme Court is really being asked to do is to decide whether this state will "act or be acted upon" when it comes to its relationship with the federal government. Counsel began his presentation with this phrase, and later repeated it when asked by the Chief Justice whether the state could simply "opt out" of Medicaid expansion if the federal government changed the current standards. Such arguments are largely ideological and dogmatic in nature—not legal—and demonstrate that the intent behind the petition is to have this Court redefine the proper role of federalism in Idaho. In sum, this Court is not really being asked to address an urgent constitutional issue created by the passage of section 56-267; rather, Regan is asking this Court to take sides in an ideological debate concerning political philosophy.

This Court is not the proper forum for such a debate—this is a choice for the people and their elected representatives in the legislature. The question this Court is being asked to answer goes far beyond the actual language in section 56-267. To the extent that this Court has essentially been invited to decide the appropriate level of state and federal cooperation in Medicaid expansion, this issue concerns "an initial policy determination of a kind clearly for nonjudicial discretion." *Id*. at 640, 778 P.2d at 962 (quoting *Baker v. Carr*, 369 U.S. 186, 217 (1962)).

For these same reasons, it appears that this matter was brought prematurely. Notwithstanding the adoption of section 56-267 by the people, pursuant to the power they reserved to themselves in Article III, section 1 of the Idaho Constitution, this matter is not yet ripe for adjudication. It is currently unclear what the legislature will do with the funding and implementation of section 56-267.[3] In short, we do not know what Medicaid expansion in Idaho will even look like yet. The concerns raised by Regan may need to be answered by this Court someday, but this is not that day. Such important constitutional questions should not be answered in a vacuum. It is this Court's proper role to resolve only actual cases and controversies—not hypothetical ones.

### III.  CONCLUSION

---

[3] For example, although voters in the State of Utah recently passed a similar Medicaid expansion initiative, its legislature is currently debating whether to limit the expansion.

25

The people have spoken by passing Proposition Two; now it is in the hands of the legislature. Therefore, under our constitutional form of government, it is up to the legislative branch to act next—not the judicial branch. Principles of judicial restraint and separation of powers should constrain us from taking sides in this debate until such time as an urgent constitutional issue or justiciable controversy actually arises. Therefore, I respectfully dissent from the majority's decision to address the merits of this case and would dismiss the petition on procedural grounds.